Action by Harry Alexander against Mary A. Costello to foreclose a mechanic's lien. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and DAYTON and GERARD, JJ.

Lawrence E. Brown, for appellant.

Leidy & Goodstein, for respondent.

---

PEOPLE v. TERWILLIGER.

(Supreme Court, Trial Term, Chemung County. June 5, 1908.)

1. FOOD—SALE OF ADULTERATED MILK—ACTIONS—BURDEN OF PROOF.
    In an action for the penalty for selling adulterated milk in violation of Agricultural Law, Laws 1893, pp. 660, 661, c. 338, §§ 20–22, it is essential for the people to show that defendant did not produce the milk in order to excuse a noncompliance with Laws 1898, p. 1304, c. 557, § 12, requiring the taking of a herd sample where the milk was delivered by the producer, unless the people show that defendant personally stated to the inspectors who took the samples that he did not produce the milk, and thereby induced them not to take a herd sample.

2. PRINCIPAL AND AGENT—AUTHORITY OF AGENT TO BIND PRINCIPAL.
    The acts and declarations of an agent are binding on his principal when made while the agent is discharging his duty as agent and acting within the scope of his authority.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 245.]

3. SAME.
    One employed to sell milk at retail from house to house may bind his employer by representations to customers as to the quality of the milk furnished, since such representations are within the apparent scope of his authority, but representations made by him to agents of the agricultural department are not binding on the employer, especially in a quasi criminal action against him for selling adulterated milk in violation of Agricultural Law, Laws 1893, pp. 660, 661, c. 338, §§ 20–22.

Action by the people against Isaac C. Terwilliger. Motion for a new trial after the granting of a nonsuit denied.

Benjamin F. Levy, for the People.

Frank S. Bentley (Roswell R. Moss, of counsel), for defendant.

COMAN, J. This action was brought to recover a penalty for the sale or offering for sale of adulterated milk, in violation of the provisions of sections 20 to 22 of the agricultural law (Laws 1893, pp. 660–661, c. 338). The evidence showed that the defendant was a vendor of milk in the city of Elmira, engaged in selling at retail from house to house; that he was a farmer, residing near the city, the owner of a dairy and a producer of milk. On the morning in question the defendant's peddling wagon, driven by his son, started from the farm with a supply of milk; but whether with the milk in question is disputed. There were several cans of milk upon the wagon when the inspectors made their tests, and these tests showed that some of the cans contained milk of the required standard, and that the milk in one of the cans was below the standard. Duplicate samples were taken from the latter can, one of which was given to the driver and one was forwarded to the state chemist. His analysis showed the milk to be much below the statutory standard of purity.

No herd sample was taken, and no attempt was made to take one. The reason given for not taking or attempting to take a herd sample was that the driver of the wagon, the defendant's son, stated to the inspectors that the can of milk in question was not produced by the defendant, but was purchased of the Royal Creamery Company. The driver was sworn by the plaintiff to prove his agency, but he was not asked where the milk was produced or bought, and no attempt was made to prove the alleged fact by the employés of the Royal Creamery Company. The only proof offered on this subject was of the alleged declaration of the son, and this was excluded under the defendant's objection. The trial resulted in a nonsuit at the close of the plaintiff's case, and I have entertained a motion for a new trial for the purpose of considering two questions, viz.: Was the taking of a herd sample necessary; and was it error to exclude the declarations of the defendant's son? My subsequent investigations and an examination of the authorities cited by counsel have resulted only in confirming the impressions formed at the trial.

Section 12 of the agricultural law (Laws 1898, p. 1304, c. 557) provides for the taking of a herd sample, and states the cases in which the taking of such a sample is necessary. It requires the taking of such a sample in all cases "where the same is delivered by the producer for manufacture, sale or shipment, or from a milk vender who purchases the milk which he sells." It might be interesting to consider whether or not in all cases where a herd sample is not taken the onus is upon the plaintiff to show that the seller was not the producer; but the determination of that question is not necessary to the decision of this case, because, at the close of the plaintiff's case, the only evidence bearing upon the question showed affirmatively that the defendant was a producer, and at least tended to show that he produced

the milk in question. My impression is that in an action of this character there are no presumptions of fact against the defendant, except such as are expressly created by the statute, and that it was essential for the plaintiff to show that the defendant did not produce the milk in question, unless it excused the failure to take such sample. This it sought to do by proof of the declarations of the defendant's agent, to the effect that the defendant did not produce the milk but purchased it of another.

I have no doubt that if the defendant had personally stated to the inspectors who took the samples that he did not produce the milk, and thus induced them not to take a herd sample, he would have been estopped from raising the question that no herd sample was taken; and the only question remaining is whether the act of the agent in making such declaration is to be regarded as the act of the defendant. I have examined the numerous authorities cited by counsel upon this point, but do not consider it necessary to analyze them. They do not change the settled and fundamental principles of the law of agency which I believe are decisive of this case. Generally speaking, the acts and declarations of an agent are binding upon his principal while, and only while, he is discharging his duty as an agent and acting within the scope of his authority. The agency of the defendant's son, as disclosed by the evidence, was for the purpose of selling milk to the defendant's customers in Elmira. If, in the course of business, he represented to one of these customers that the milk was produced by the defendant, that it was of a certain kind and quality, or that it was only of a certain age, the defendant would be bound by such representations. The reasons why the defendant would be bound by representations of this character are, first, they relate to the subject-matter of his agency; they are within the presumed scope of his authority; and they are made to persons with whom he is authorized to deal.' The authority to make such representations is implied from the nature of the employment, but the defendant did not employ his son to do business with or have any dealing with the Agricultural Department or its agents, and there is nothing in the nature of his employment from which such authority naturally flows or would be implied. The business in which the defendant employed his son was that of selling milk, and any representations made by his son in that business would be binding upon the principal; but there is no relation whatever between the business of selling milk and that of negotiating with the agents of the Agricultural Department and making statements to them, either as to the quality of the milk or as to the place where it was obtained, and this I believe to be especially true in an action of this character where the basis of the claim is of a quasi criminal nature.

For these reasons, I think that the nonsuit was properly granted, and the motion for a new trial must be denied.